Rose, C. J.,
dissenting:
I concur in the majority’s cogent analysis that it was error to give instruction #11, which states that malice aforethought, an essential element of the crime of murder, is conclusively established when death by child abuse has been proven. However, I *728 disagree with the majority that we should discard our long-established precedent that prohibits harmless error analysis from being used to excuse jury instructions that fail to include all the essential elements of the crime. Instead, I would prefer to stay with the time-honored rule that such errors are so fundamental to due process and fairness that they cannot be considered harmless. For this reason and the fact that I conclude that admissible evidence was improperly excluded, I would reverse this case and remand for a new trial.
This court has held that there are a few types of error that are so fundamental to our concept of justice that harmless error analysis is inapplicable. See Thompson v. State, 108 Nev. 749, 838 P.2d 452 (1992). A jury instruction that incorrectly states the elements of the charged crime is one of them.
In Thompson, we held that where the jury instructions fail to correctly state all of the elements of the crime, we will permit harmless error analysis only in certain limited circumstances. These circumstances are: (1) where the defendant is acquitted of the offense on which the jury was improperly instructed; (2) where the defendant admitted the element on which the jury was improperly instructed; and (3) where no rational jury, having already found the predicate facts beyond a reasonable doubt, could find those facts without also finding the ultimate presumed fact. See id. at 756, 838 P.2d at 456-57.
As none of these circumstances is present here, the inclusion of a jury instruction that omits an essential element of the crime is not harmless, and thus warrants reversal. The majority, however, alters the harmless error jurisprudence of this state by relying on Neder v. United States, 119 S. Ct. 1827 (1999), a recent United States Supreme Court decision in a federal property crime case.
In Neder, the United States Supreme Court held that a trial court’s failure to include all the essential elements of the crime in the jury instruction is subject to harmless error analysis. This holding, however, is in no way binding upon us, and the dissent, written by Justice Anton Scalia, persuasively articulates why adopting this new rule is erroneous and invades the province of the jury.
In accord with the dissent in Neder, I believe that the right to be tried by a jury, a guarantee that is central to the Constitution, includes the right to have the jury determine the guilt or innocence of a defendant—a determination that necessarily requires proof of all elements of a crime. Thus, “the right to render the verdict in criminal prosecutions belongs exclusively to the jury; reviewing it belongs to the appellate court.” Neder v. United States, 119 S. Ct. 1827, 1848 (1999) (Scalia, J., dissenting).
The majority of this court, however, applies the harmless error *729 analysis and asks whether it is “clear beyond a reasonable doubt that a rational jury would have found the defendant guilty” absent the erroneous instruction. Thus, the majority essentially steps into the shoes of the jury and fills in “gaps” necessary to the verdict. While I believe that harmless error analysis may properly be used to review a verdict under the circumstances outlined in Thompson, such analysis only applies when the jury actually renders a verdict—that is, when the jury has considered all the elements of the crime and found the defendant guilty.
Although I disagree with the majority’s general conclusion that harmless error review applies to “instructions which omit, misdescribe, or presume an element of an offense,” I also have concerns with the majority’s application of harmless error analysis to the facts of this case. The majority concludes that the use of the erroneous instruction, which omitted an essential element of the crime of murder, was harmless because: (1) the jury was given one proper instruction, jury instruction #10, that defined implied malice on which the jury could have relied; and (2) the jury’s finding of torture in the penalty phase provided sufficient evidence to support a finding of implied malice in the guilt phase. I strongly disagree with these conclusions.
First, it is mere speculation to assume that the jury relied on instruction #10 because there is no evidence in the guilt phase so indicating. During the guilt phase, rather than convicting Coliman of first-degree murder based on a finding of implied malice, the jury could have relied on the improper mandate set forth in instruction #11, and thus concluded that malice was established solely because the murder occurred “by means of child abuse.” Because it is unclear, and particularly because it is not “clear beyond a reasonable doubt,” that the jury made any finding in the guilt phase with respect to malice aforethought, I cannot say that this error was harmless.
Second, I disagree with the majority that we can bootstrap findings made in the penalty phase to cure errors made in the guilt phase. By statute, the guilt and penalty phases of a criminal trial are separate hearings in which different evidentiary rules apply. See NRS 175.552. Often, in the penalty phase, the jury hears evidence concerning a defendant that was inadmissible during the guilt phase—evidence that the jury was forbidden from considering in determining the guilt or innocence of the accused. Therefore, because the rules of evidence, the ultimate purpose, and the overall tenor of these two proceedings are vastly different, I cannot conclude that the jury’s finding of torture in the penalty hearing equates to a finding of implied malice in the guilt phase. Further, using penalty phase findings to cure errors in the guilt phase may result in harsher and unequal treatment for death *730 penalty defendants who do not have the option to waive such a hearing. See NRS 175.552(2) (“In a case in which the death penalty is not sought, the parties may by stipulation waive the separate penalty hearing . . . .”). Thus, I conclude that based on the erroneous jury instruction alone, reversal is warranted in this matter.
To compound matters, I believe that the trial court improperly excluded relevant, admissible evidence. One of Collman’s defenses was that Stach was the abuser and killer of Damian. This included specific evidence of Stach slapping Damian across the face with her hand hard enough to draw blood and across the buttocks with a spatula, beating Damian across the hands and over his body with a wooden spoon, and Stach bragging that she gave Damian a very noticeable black eye for misbehaving. Despite Collman’s defense, the State put forth great effort to show that the bite marks that could be identified on Damian’s body were inflicted by Coliman. One dental expert was called by the State to testify that the bite marks matched Collman’s teeth. Coliman countered by presenting three expert witnesses who testified that the bite marks were not Collman’s and that the bite mark evidence was inconclusive. Accordingly, whether there were any bite marks, let alone who inflicted them, were central issues at trial.
To bolster his defense that Stach inflicted the bite marks, Coliman attempted to introduce evidence that Stach was interested in vampirism and the occult. This evidence included items of vampire literature, two dots tattooed on Stach’s neck to resemble a vampire bite, and the fact that Stach had given her son a name that closely resembled the child devil’s designation in a popular movie. Coliman alleged that this evidence was probative because, in a matter where two people were accused of biting another, it was more probable that the biting was done by someone who was involved in vampirism and the occult.
The State, however, argued against admission of this evidence alleging that it was irrelevant and that Stach had recently rejected her vampire practices and beliefs. The district court agreed, and no evidence of Stach’s vampire proclivities was admitted into evidence. Normally we permit the district court substantial discretion in determining what constitutes relevant evidence, but we have also held that the district court’s exercise of its discretion must not prohibit a defendant from presenting his or her full defense. See Stinnet v. State, 106 Nev. 192, 196, 789 P.2d 579, 582 (1990); Vincent v. State, 97 Nev. 169, 170, 625 P.2d 1172, 1173 (1981). Moreover, a defendant in a death penalty case is generally afforded greater latitude in the presentation of evidence. See U.S. v. Stevens, 935 F.2d 1380, 1404-05 (3rd Cir. 1991). With these principles in mind, I believe that the vampire propensities of Stach *731 should have been received into evidence, and that the district court erred in not permitting Coliman to present this evidence.
Further, the evidence of Stach’s interest in vampirism and the occult at the time Damian was being abused could have affected the jury’s finding of torture as an aggravating factor during the penalty phase of Collman’s trial. Such evidence may well have led the jury, or certain of its members, to conclude that Stach was more likely the one who inflicted the bite marks on Damian, especially in light of Stach’s guilty plea for child neglect. Thus, the jury may ultimately have concluded that the aggravating factor of torture could not be found beyond a reasonable doubt. This would then leave one aggravating factor against six mitigating factors, with one of the mitigating factors being that Coliman did not intend to kill Damian.[1] Accordingly, I believe that the decision to impose the death penalty may well have been different had Coliman been permitted to present the evidence of Stach’s practice and interest in vampirism and the occult.
Finally, the district court’s error in refusing to admit evidence to show Stach’s vampire practices and beliefs is compounded by the fact that the district court allowed the State to present remote, tenuous evidence of Collman’s guilt. Specifically, the district court allowed the State to enter evidence suggesting that Coliman was not remorseful over killing Damian because he propositioned Stach for sex around the time of Damian’s funeral. I see, at best, an attenuated relationship between sexual desire and lack of remorse. Moreover, my colleagues in the majority point out the inconsistent evidentiary rulings made by the district court in that evidence of Collman’s sexual desires were deemed admissible, whereas evidence concerning Stach’s sexual desires—mainly propositioning another for sexual relations—was deemed irrelevant, prejudicial, and incredible. Throughout the trial, it appeared that the relevancy of the State’s evidence was upheld, but the converse was not true when Coliman attempted to present evidence in his own behalf.
In conclusion, I think it is a mistake to apply the harmless error rule to an error so fundamental as the correct statement of the elements of the crime and there is no compelling reason to reverse our prior authority that refused to overlook this type of substantial error. Further, Coliman was prevented from presenting evidence that would have had a tendency to show that Stach was the *732 one who had inflicted the bite marks on Damian. In reviewing death penalty cases, we are instructed by the United States Supreme Court that we are to do so with a heightened sense of scrutiny. See, e.g., Green v. Georgia, 442 U.S. 95 (1979); Gardner v. Florida, 430 U.S. 348 (1977); Furman v. Georgia, 408 U.S. 238 (1972). It seems to me that the majority has done just the opposite in this case. I would reverse this case and remand it for a new trial.

At least one and perhaps all of the jurors found that Coliman did not intend to kill Damian. While the United States Supreme Court has held that a defendant may be given the death penalty even though he or she did not intend to kill the victim, see Tison v. Arizona, 481 U.S. 137 (1987), I believe the state courts should be reluctant to affirm the death penalty in such a case where a substantial error was admittedly made at trial and the defendant was prevented from presenting key evidence on an important issue.